Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, and 177 Named Employees, Plaintiffs-Appellees,

v.

GRIM HOTEL COMPANY, A Corporation, et al., Defendants-Appellants.

No. 83–2629.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1984.

Jenkens & Gilchrist, Steven R. McCowan, Steve Bradford, Dallas, Tex., for defendants-appellants.

Barbara E. Kahl, Linda Jan S. Pack, Atty., Washington, D.C., for plaintiffs-appellees.

Before BROWN, TATE, and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

The Secretary of Labor and 177 named Texas hotel employees brought this suit in 1980 against five hotel corporations and their president for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, in the operation of five Texas hotels that have occurred in the period following February 14, 1977. Trial of liability and damage issues was severed. Following trial of the liability issue, the district court in 1983 entered a partial judgment that permanently enjoined the defendants from violation of the minimum wage and overtime requirements of the Act, 29 U.S.C. §§ 206, 207.[1] The defendants appeal this judgment granting injunctive relief. 28 U.S.C. § 1292(a).

On their appeal, the defendants do not deny that the hotel workers in question have not received the minimum wage and overtime compensation required by the Act, if the Act applies here. Rather, they challenge the district court's injunction requiring conformance to the requirements of the Act on the grounds: (I) that the corporate-employers do not constitute an "enterprise" within the meaning of the Act; and (II) that the president of those corporations, Charles Alberding, is not an "employer" within the meaning of the Act. They also raise procedural contentions (III) that the district court lacked personal jurisdiction of Alberding and (IV) that res judicata barred the grant of relief in the present case. Finding no merit in any of these positions, for reasons discussed, respectively, in I through IV, *infra,* we affirm.[2]

*Facts*

The employees whose wages are in issue work in five hotels in five different Texas cities. Each of the five hotels is owned by a corporate defendant, and each of these corporations has the one hotel as its sole asset. The remaining defendant, Charles Alberding, is president of the five hotel-owning corporations.

---

1. The Act contains a minimum hourly wage requirement, 29 U.S.C. § 206, and a requirement that an increase over required wages be paid to employees for overtime work (in excess of forty hours per week), 29 U.S.C. § 207. Employees are permitted to sue employers for "unpaid minimum wages" and "unpaid overtime compensation." 29 U.S.C. § 216(b). The Secretary of Labor may sue employers to enjoin future violations and to require them to pay their employees past unpaid minimum wages and overtime compensation. 29 U.S.C. §§ 216(c), 217.

2. The defendants also raise several other insubstantial contentions that do not merit discussion. Without citation of relevant authority, they claim that provisions of the Fair Labor Standards Act are unconstitutionally vague, a contention quickly disposed of by the district court as patently meritless. They also question two evidentiary rulings of the district court: one involving the admission as relevant of evidence concerning the activities of other Alberding corporations in coordinating and assisting the functions of the five defendant corporations—clearly involving no abuse of trial court discretion; and one involving the admission of allegedly hearsay testimony, which, even if erroneous (and we accept this for argument only), was harmless.

Alberding incorporated those corporations and has managed their operation. His wife has been the secretary-treasurer of the corporations, and his close business associate, J.E. Scally, has been their vice-president until recently. The board of directors of each corporation has consisted of Alberding, his wife, and Scally. Though the stock of the corporations has been transferred within the Alberding family, virtually all of it has been owned by Alberding, his wife or their daughters.

Alberding and the five defendant corporations controlled and managed by him contend that, by virtue of this corporate fragmentation of his/their hotel operations, they are not a single "enterprise," *see* I *infra,* and he himself is not an "employer," *see* II *infra,* for purposes of coverage of the Fair Labor Standards Act. The courts have in the past rejected similar efforts through corporate fragmentation by Alberding to avoid obligations and liabilities under the Act.[3] In its thorough and thoughtful memorandum opinion, the district court likewise rejected the similar contentions here advanced.

## I. *Five Corporations As One Enterprise*

The minimum wage and overtime provisions of the Fair Labor Standards Act apply to employees of "an enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. §§ 206, 207, which "enterprise" is statutorily defined, inter alia, as requiring an annual gross volume of business done as not less than $250,000, 29 U.S.C. § 203(s)(1). The parties have stipulated that each of the hotel cor-

porations has not had a sufficient dollar volume of business to come within the Act's definition of an enterprise "engaged in commerce." 29 U.S.C. § 203(s). The parties also stipulated, however, that the hotel corporations, considered as a group, did meet the Act's dollar volume requirement. Accordingly, the obligation of the corporations to conform to the Act's wage and hour requirements depends on whether the hotel corporations, viewed together, constitute an "enterprise."

The Act defines this term as follows:

"Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments by one or more corporate or other organizational units....

29 U.S.C. § 203(r). This court has considered this statutory definition, its legislative history, and interpretive administrative regulations, and we have concluded that, despite corporate fragmentation in operation, a single "enterprise" nevertheless exists for the purpose of the Act, where: (A) the corporations perform related activities, (B) through unified operation or common control, (C) for a common business purpose. *Donovan v. Janitorial Services, Inc.,* 672 F.2d 528, 530 (5th Cir.1982); *Brennan v. Veterans Cleaning Service, Inc.,* 482 F.2d 1362, 1366–67 (5th Cir.1973); *Shultz v. Mack Farland & Sons Roofing Co.,* 413 F.2d 1296, 1299 (5th Cir.1969).[4] The dis-

---

**3.** Alberding and three of his Oklahoma corporations were found responsible for minimum wage and overtime pay violations at an Oklahoma hotel owned and operated in a manner nearly identical to the Texas hotels involved in this case. *Marshall v. McAlester Corp.,* 438 F.Supp. 1005 (E.D.Okla.1977), *aff'd in part & rev'd in part,* Nos. 78–1303, 78–1304 (10th Cir.) (holding Alberding liable as an "employer"), *cert. denied,* 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980). Recently, this circuit found Alberding responsible for minimum wage and overtime violations as to companies involved in irrigating rice fields in Louisiana; again, fragmented corporate structuring was at the heart

of Alberding's defense against application of the Act, and we rejected the conclusion that such structuring permits avoidance of the Act's requirements. *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190 (5th Cir.1983).

**4.** Whether an enterprise exists is a conclusion of law (the review of which is not limited by Fed. R.Civ.P. 52(a)'s clearly erroneous standard), although subsidiary factual findings are, of course, subject to review under the clearly erroneous standard. *See Castillo v. Givens,* 704 F.2d 181, 185–87 & n. 12 (5th Cir.1983) (employee and employer status is question in law); *Dunlop*

trict court correctly found that these three tests are met in the present case.

### A. *Related Activities*

The defendants contend that the five hotel corporations do not engage in related activities because the ratio of long-term to short-term guests is different at each. To accept this contention would be to recognize distinctions so fine as to be inconsistent with our previous decisions. *See Donovan v. Janitorial Services, Inc.,* 672 F.2d at 529–30 (janitorial service, maid, and garbage collection companies); *Brennan v. Veterans Cleaning Service, Inc.,* 482 F.2d at 1364–67 (janitorial, maid, and sewer and septic tank cleaning services).

The district court found that each hotel corporation owned a hotel that operated in the same or a similar manner. At one time, Alberding and his business associates planned to place all their hotels under the banner "Alsonett"; though this never became a formal hotel group, the hotels loosely operated under the name. Employees at one hotel assisted, from time to time, at others. By whatever analysis, however, businesses, calling themselves hotels and operating as hotels, whether their guests stay a short or long while, are engaged in related activities for the purpose of the Act.

### B. *Unified Operation or Common Control*

By emphasizing the formally distinct nature of the hotel corporations and the day-to-day management of the hotels by different managers, the defendants challenge the district court's conclusion of unified operation and common control.

Nevertheless, "[w]e take the view that these factors are simply the ordinary attributes of separate incorporation and the management of physically separate units." *Shultz v. Mack Farland & Sons Roofing Co., supra,* 413 F.2d at 1300. We must look beyond formalistic corporate separation to the actual or pragmatic operation and control, whether unified or, instead, separate as to each unit. How centralized is the making of significant corporate decisions? Did a single source create and fund the corporations or businesses in issue or were they created and funded by separate interests? How interdependent are those corporations or businesses in actual operation? Are they held out to the public singly or collectively? *See Donovan v. Janitorial Services, Inc., supra,* 672 F.2d at 530; *Shultz v. Mack Farland & Sons Roofing Co., supra,* 413 F.2d at 1300–01.

The district court found facts to establish each of these unified operation and common control indicators. Of utmost significance, Alberding, as the defendants admit, had and exercised the power to hire and fire the manager of each hotel. Much like a commander and his generals, this put one man, Alberding, at the apex of hotel operations. *See Shultz v. Mack Farland & Sons Roofing Co., supra,* 413 F.2d at 1301.

Beyond his control of the hotel managers, though, the district court found that Alberding incorporated all of the hotel corporations, personally funded them when necessary, and had final and virtually sole authority to approve significant expenditures. He was authorized to sign on the bank account of every hotel. "Money talks." *Id.* Indeed, Alberding was the only person who could approve across-the-board adherence to federal minimum wage and overtime requirements. That, indeed, is a most significant control indicator in a wage and hours action.

Finally, the hotels loosely operated under the informal Alsonett banner. Employees, albeit infrequently, shifted employment from one hotel to another. Furniture was shifted from one hotel to another. Alberding-related companies provided bookkeeping and financial services to the hotels. Each hotel corporation shared the same officers and directors, and there was what the district court termed a "fluid shifting of debits and credits between the various corporations."

There was abundant evidence that the hotels were centrally directed, connected,

---

*v. Ashy,* 555 F.2d 1228, 1229 (5th Cir.1977) (enterprise existence is question of law).

and interdependent. They were a loose-knit group, owned by the Alberding family, firmly coordinated and controlled by Alberding. Except for the formality of incorporation and the ownership of stock by different members of the Alberding family, the hotels were centrally controlled by and operated as a single group.[5]

### C. *Common Business Purpose*

The defendants weakly challenge the common business purpose conclusion of the district court. The unified operation of the hotels, their related activities and interdependencies, the centralization of control in Alberding, the centralization of ownership in the Alberding family—all these are indicators of common business purpose. They establish "[m]ore than a common goal to make a profit." *Brennan v. Veterans Cleaning Service, Inc., supra,* 482 F.2d at 1367. They establish a family owned and operated business existing for the purpose of operating a group of hotels for the profit of the Alberding family. In short, the commonly-controlled corporate entities were operated, within the meaning of the Act, for a common business purpose.

### *Summary*

■ The Fair Labor Standards Act is to be construed liberally because by it Congress intended to protect the country's workers. *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194 (5th Cir.1983). The defendants implicitly assert that each hotel corporation is too small to be covered by the Act. As the preceding discussion demonstrates, the argument draws its only life from the fact of separate incorporation of the entities that in fact operated as a single enterprise performing related activities through a common control. As the authorities previously cited held, separate incorporation may not be used as a device to splinter business activity and thereby to avoid the requirements of the Act.[6]

## II. *Alberding As "Employer"*

■ The permanent injunction before us for review enjoins, as an "employer," Alberding personally and individually from minimum wage and overtime violation at the hotels and holds him subject to an injunction restraining him from withholding payment of the compensation due to the plaintiff employees, when the amounts due are determined in the damages phase of the litigation. To be bound by the requirements of the Fair Labor Standards Act, one must be an "employer." 29 U.S.C. §§ 206–07. An employer is "any person acting directly or indirectly in the interests of an employer in relation to an employee." 29 U.S.C. § 203(d).

The Supreme Court has termed the Act's employer definition "expansive" and has held that "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work" create statutory employer status. *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38

---

5. The present case is thus distinguishable from *Dunlop v. Ashy,* 555 F.2d 1228, 1233 (5th Cir. 1977), on which defendants rely, because there the owners of a motel leased to a third party, in "an arm's length transaction," the adjacent restaurant, and the third party separately controlled and operated the restaurant.

6. The defendants also suggest that the "enterprise" conclusion of the district court is somehow affected by the circumstance that three of the hotels were leased to allegedly bona fide third persons on September 10, 1981, October 16, 1982, and November 1, 1982, thus removing these three hotels from the enterprise and possibly reducing the remainder to below the gross annual volume required for them statutorily to constitute an enterprise subject to the Act. Suffice it to say, that the record establishes that the five hotels were located as an enterprise with requisite annual volume from 1977 through at least 1981. Whatever relief the defendants might be entitled to seek as to their future liability of the enterprise (if the leases are to bona fide third parties), the five corporations and their president are clearly shown to be subject to the injunctive relief granted (enjoining them from violations and restraining them from withholding from the employees past unpaid minimum wages and overtime compensation due them), based upon their past violations of the Act. *See Donovan v. Sabine Irrigation Co., Inc.,* 695 F.2d 190, 196–97 (5th Cir.1983) (rejecting a similar contention advanced by Alberding in similar litigation, and noting injunctive relief for past violations is proper even though an employer no longer falls within the statutory definition at some subsequent period).

L.Ed.2d 406 (1973). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983). This circuit, as to Alberding himself, has underscored the importance of "the economic realities" of employment and affirmed a finding of employer status where there was evidence that Alberding "independently exercised control over the work situation." *Donovan v. Sabine Irrigation Co., supra*, 695 F.2d at 194–95.

Here, to reiterate, the district court found the realities to be: Alberding began and controlled the hotel corporations. He has held their purse-strings and guided their policies. It was only he who could authorize compliance with the Fair Labor Standards Act.[7] He personally selected the manager of every hotel. He travelled to Texas to inspect the hotels and to solve major problems. The hotels were part of the Alberding family business. In short, the hotels, speaking pragmatically, were Alberding's and functioned for the profit of his family. Like the individual statutory employers in *Mack Farland* and *Janitorial Services, supra*, Alberding was the "top

man." *Shultz v. Mack Farland, supra*, 413 F.2d at 1300. *See Donovan v. Janitorial Services, Inc., supra*, 672 F.2d at 531 (evidence establishing enterprise also established status of corporate owner as employer).[8]

### III. Personal Jurisdiction Over Alberding

Alberding, an Illinois resident, asserts that the Texas federal district court erred in denying his motion to dismiss for lack of personal jurisdiction. This contention is patently without merit.

■ "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir.1983). When personal jurisdiction over a non-resident is asserted by reason of a state long-arm statute, not only must the statute apply,[9] but its application "must comport with due process requirements of the fourteenth amendment." *Id.*, 711 F.2d at 1265.

■ Alberding was plainly amenable to suit under the Texas long-arm statute, Tex. Rev.Stat. § 2031b. That statute provides that jurisdiction may be asserted over a non-resident who has engaged in business in Texas

---

**7.** We cannot easily imagine firmer proof of Alberding's "employer" status. We recognize that Alberding disputes the fact, but the district court had before it the testimony of hotel managers and employees concerning Alberding's ultimate control over wages. The credibility of this evidence was for the district court's determination. It credited the evidence, and its finding of fact on this issue is far from clearly erroneous. Fed. R.Civ.P. 52(a).

**8.** Contrary to the appellants' assertions, *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262–63 (8th Cir.1963), does not support a different result. There the controlling shareholder of the corporation had not "supervised the relationship between the corporation and its employees" *id.* at 263, and "had nothing to do with the hiring of the employees or fixing their wages and hours," *id.* at 263.

**9.** Since the *DeMelo* test is plainly satisfied here, we need not consider whether anything more than the conceded technical effectiveness of the

physical service under the Texas long-arm statute is required when the plaintiff's cause of action is founded on federal question jurisdiction. As *DeMelo* concedes, although holding that a non-resident must in such circumstance be amenable to jurisdiction under the terms of a state long-arm statute, our circuit jurisprudence is conflicting as to this issue, 711 F.2d at 1264–66. Thus, *Lapeyrouse v. Texaco, Inc.*, 693 F.2d 581, 585 (5th Cir.1982), holds that the state long-arm test of jurisdiction over the properly served non-resident becomes irrelevant " 'where the power of the federal court . . . can be independently sustained . . . on the ground that the matter in controversy arises under the Constitution, laws or treaties of the United States' " and that, once technical compliance with the requirements of service under the state statute is shown, the "appropriate inquiry lies with the due process of laws clause of the Fifth Amendment" in determining whether personal jurisdiction over the non-resident may be exercised by the federal court in such federal question jurisdiction.

by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this state, or the committing of any tort in whole or in part in this state. *The act of recruiting Texas residents directly or through an intermediary located in Texas for employment inside or outside of Texas shall be deemed doing business in this state.*

Tex.Rev.Civ.Stat. § 2031b(4) (emphasis added).

Alberding's conduct falls squarely within this description of non-residents amenable to personal jurisdiction under the Texas long-arm statute. Alberding himself hired the managers of the five Texas hotels. He delegated to those managers—his statutory "intermediaries"—the authority to hire the other employees of the hotels, the very persons who are plaintiffs in this action. Alberding regularly travelled to Texas in connection with the operation of the Texas hotels. And he made personal loans to the Texas hotel corporations and personally signed loan agreements for the Texas hotel improvements. This conduct satisfies the doing-business-by-contract test of the Texas long-arm statute, including the employee recruitment test of that statute.

Nor do we find merit to Alberding's argument that, because his contracts with Texas were in his role of corporate president, he himself was not doing business in Texas so as to be subject to personal jurisdiction under the Texas long-arm statute.[10] Here, however, Alberding is not sought to be held derivatively liable for acts performed by the corporation(s) in Texas that Alberding had simply authorized solely in his corporate capacity while he was at a non-resident situs.

Most importantly, Alberding is sued for violations of the federal statute, under which he is statutorily characterized as an employer and is personally responsible for defaults because of his substantial personal control of the terms and conditions of the Texas employee's work in Texas. *See* II *supra.* He, no less than the corporations he owned, directed, and controlled, is personally liable for unpaid statutory wages to his employees. *Id.* Consequently, his Texas-connected acts that produced injurious effects to the Texas-based employees cannot, as a matter of law or fact, be regarded as performed solely in his corporate capacity. Moreover, as previously noted, Alberding's personal presence in Texas in connection with those acts, and his personal acts in connection with those Texas enterprises, were not insubstantial.[11]

**10.** Alberding relies upon what he terms a "fiduciary shield" principle that "jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within their jurisdiction that would subject them to the coverage of the state's long-arm statute." 4 Wright and Miller, Federal Practice and Procedure (1983 Supp.), pp. 58–60.

**11.** The Texas decisions upon which Alberding relies in his "fiduciary shield" argument do not support his contention that Texas long-arm jurisdiction cannot be obtained over a corporate officer who himself commits acts in Texas or who commits acts with reasonably foreseeable consequences in Texas for which he may be held personally liable.

In *Siskind v. Villa Foundation for Education, Inc.,* 642 S.W.2d 434 (Tex.1982), the Texas Supreme Court held non-resident corporate officers not to be within the personal jurisdiction of the Texas courts. *Id.* at 437–38. The court held that corporate conduct in Texas could not be

"imputed to the individual" officers without some showing of acts in Texas by these employees. *Id.* By negative implication, the court indicated that there would be personal jurisdiction over the officers if there were allegations of "specific acts" on their part giving rise to jurisdiction. *Id.* The court further noted

Absent some allegations of a specific act in Texas, or one with reasonably foreseeable consequences within the state's borders, a nonresident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business here. *Id.* at 438.

Due process is satisfied if the defendant's activities outside the state have reasonably foreseeable consequence in the forum. Siskind, however, does not allege any act on the part of these individuals from which we can infer a reasonably foreseeable consequence occurring [in] Texas.

*Id.* at 438 n. 5 (citation omitted). *Cf. Hoppenfeld v. Crook,* 498 S.W.2d 52, 58 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.) (no jurisdiction over corporate president who never went to

Likewise, the personal jurisdiction afforded over the non-resident Alberding by the Texas long-arm statute plainly comports with constitutional due process requirements. Alberding's acts and Texas-connected activities plainly show sufficient "minimum contacts" with Texas, that he "purposefully availed himself of the benefits" of Texas, that he engaged in conduct "that bears reasonably foreseeable consequences" in Texas, and that Texas and 177 Texas employees have a strong interest in litigating in Texas, the forum of the wage and hour dispute. *See DeMelo v. Tonche Marine, Inc.*, 711 F.2d at 1270. Consistent with due process, an employer fairly may be sued for employment practices in the forum in which he has recruited his employees and caused them to undertake their work. *See Garcia v. Vasquez*, 524 F.Supp. 40, 42 (S.D.Tex.1981).

Nor is due process offended when a non-resident corporate agent or employee is made subject to personal jurisdiction in the forum state for a foreseeable consequence therein of his personal act performed elsewhere, although allegedly performed only as a corporate functionary. *Calder v. Jones*, ⸺ U.S. ⸺, ⸺, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). As there stated, upholding California personal jurisdiction over Florida employees of a corporation,

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at California residents, and jurisdiction over them is proper on that basis.

*Id.* (citation omitted).

### IV. *Res Judicata*

The defendants finally contend that, somehow, res judicata bars the present action by the Secretary and 177 Texas employees of five Texas hotels owned by five Alberding-controlled corporations because of prior litigation with regard to an Oklahoma hotel and three Oklahoma corporations, as well as Alberding himself. In this prior litigation, the Eighth Circuit held the Oklahoma operation to be part of a single "enterprise" (including some 35 hotels), and Alberding an "employer" (thus rejecting contentions similar to the present that the corporate-fragmentation of the enterprise permitted it to evade application of the federal wages and hours act). *See* note 3 *supra*. If we understand the defendants' contention, it is that the earlier Oklahoma suits bar the present one because, although directed only at securing wage/hour compliance and back pay for employees at the Oklahoma hotel, it involved the same Alberding enterprise as that now found to exist—although, in this case, involving the employees at five Texas hotels and five corporations owning them that were not made parties to the Oklahoma litigation (although named as among the 33 hotels forming part of the Alberding-controlled enterprise there found).

The test in this circuit for determining whether a claim is barred by res judicata is as follows:

> " 'For a prior judgment to bar an action on the basis of *res judicata*, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.' " *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir.1983) (en banc), quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979).

Among other deficiencies in the defendants' res judicata argument, it suffices that we note that the Oklahoma suit involved neither the same cause of action nor the identical parties (or privies thereto) as did the present suit. The Oklahoma suit was

Texas, did not solicit plaintiff's business, and

was not alter ego of corporation).

brought on behalf of employees at an Oklahoma hotel, whereas the present suit is brought on behalf of employees at five Texas hotels. Whether the test of the same cause of action be whether the primary right and duty or wrong are the same in each action or be, instead, whether the claim arises out of the same transaction, *Nilsen v. City of Moss Point, supra,* 701 F.2d at 559, 560 & n. 4, it is not met here, where the previous Oklahoma suit included only the payment of statutorily required wages to employees of an Oklahoma hotel, whereas the present suit concerns the wages not paid to the employees of the Texas hotels.

Moreover, the present action concerned wage and hour violations as to a different group of employees occurring almost wholly *after* the entry of judgment in the previous Oklahoma action.[12] The prior decisions of this circuit recognize that a prior adjudication for or against an employer with regard to Fair Labor Standards Act violations does not bar a subsequent suit against him arising from a subsequent or different factual situation, *Hodgson v. Royal Crown Bottling Company, Inc.,* 465 F.2d 473, 475 (5th Cir.1972), or from "the activities of an entirely different group of people," *Credit Service, Inc. v. Fleming,* 372 F.2d 143, 146 (5th Cir.1967).

The defendants' contention that res judicata bars the present suit thus has no merit. Aside from its lack of even technical merit, we are additionally unable to resist the comment that the argument is functionally foolish that the Secretary cannot enjoin wage and hour violations in one state or at one locality because he did not attempt to join relief for these employees when he enjoined wage and hour violations in another state or at another locality, or that the former employees may forever be deprived by such alleged failure of the Secretary in the earlier litigation (concerning other employees) of the statutory protection Congress intended to afford them

by its enactment of the Fair Labor Standards Act.

*Conclusion*

For the foregoing reasons, we AFFIRM, the district court judgment appealed from.

AFFIRMED.

---

**12.** The Texas action was filed February 14, 1980 and sought back pay for violations occurring after February 14, 1977. In the Oklahoma action, the district awarded relief for violations in the period May 1, 1973 to November 11, 1976. *Marshall v. McAlester Corp.,* 438 F.Supp. at 1014 (March 31, 1977).