**William E. BROCK, etc., Plaintiff,**

**v.**

**Janet T. HUTTO, et al., Defendants.**

**Civ. A. No. 84–T–996–N.**

United States District Court,
M.D. Alabama, N.D.

Aug. 30, 1985.

Leighton Beers, Office of the Sol., U.S. Dept. of Labor, Birmingham, Ala., for defendants.

Bruce J. Downey, III, Henry C. Barnett, Jr., Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for DeHaven and AAA Employment, Inc.

Clyde C. Owens, Jr., Ball, Ball, Duke & Matthews, Montgomery, Ala., for Janet Hutto.

MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The Secretary of Labor has brought this lawsuit claiming that two employment agencies located in Montgomery, Alabama and those responsible for the operation of the agencies are subject to and have violated the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C.A. §§ 201–219. Based upon the evidence presented at a nonjury trial, the court concludes that the Secretary's claim has merit and warrants appropriate relief.

I.

AAA Employment, Inc. (AAA) is a corporation located in St. Petersburg, Florida. It is managed generally on a day-to-day basis by John DeHaven, its founder and chairman of the board. AAA operates a number of local employment agencies throughout Alabama, Georgia, Mississippi, and Florida. Each local agency is operated according to a so-called "partnership agreement." Under this agreement, there are two types of partners, each sharing 50% of the profit of the local agency: a "worker" partner, who is generally a local person responsible for the day-to-day operation of the local agency; and an "investor" partner, who puts up the initial capital and is either AAA or its chairman of the board, John DeHaven. The money DeHaven receives as an investor partner is his salary for his services to the entire operation. All of the local agencies, irrespective of whether the investor partner is AAA or DeHaven, are under the direct supervision and control of AAA; and, since DeHaven is the principal manager of AAA, all local agencies are also under his direct supervision and control.

Between 1981 and 1983, AAA was an investor partner for two local agencies in Montgomery, Alabama. The manager and worker partner of these two agencies was Janet T. Hutto.

In this lawsuit, the Secretary of Labor has sued AAA, DeHaven and Hutto. He charges that they failed to comply with the minimum wage, overtime compensation and record keeping provisions of the FLSA in the operation of the two agencies between 1981 and 1983.

II.

The first issue for the court is whether the two Montgomery agencies were subject to the FSLA between 1981 and 1983. The court finds that they were.

The Secretary is proceeding primarily on an "enterprise" theory of coverage. The FSLA is applicable to an "enterprise engaged in commerce." 29 U.S.C.A. §§ 206, 207. An enterprise is deemed to have done such if the following two elements are met: (1) it "has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for

commerce by any person," 29 U.S.C.A. § 203(s); and (2) the enterprise's annual gross volume of business done is not less than $250,000, 29 U.S.C.A. § 203(s)(1). The evidence satisfying the first element is clearly present. As to the second element, the evidence is undisputed that each of the local Montgomery agencies did not have sufficient dollar volume of business to come within the Act's definition of enterprise; however, the evidence is also undisputed that AAA and all its local agencies, considered together, met the Act's dollar volume requirement. The issue of coverage, therefore, turns on whether AAA and its local agencies, including the two Montgomery agencies, constituted a single enterprise and thus fell within the Act's coverage.

The FSLA defines an enterprise as

> related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments by one or more corporate or other organizational units....

29 U.S.C.A. § 203(r). To meet this statutory definition, the following three elements must be present: (1) related activities; (2) unified operation or common control; and (3) a common business purpose. *Donovan v. Easton Land & Development, Inc.*, 723 F.2d 1549, 1551 (11th Cir.1984). All three elements were present in the operation of AAA and its local agencies between 1981 and 1983.

A. Related Activities

Activities are related when they are "the same or similar" or when they are "auxiliary and service activities." "Auxiliary and service activities" are those involving "operational interdependence in fact." *Id., quoting Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1367 (5th Cir.1973).

Viewed both horizontally (the relationship among the local agencies) and vertically (the relationship between AAA and its local agencies), the activities of AAA and its local agencies were the same as well as operationally interdependent. AAA and the local agencies were all dedicated to performing the same activity: locating jobs for clients seeking employment in areas served by AAA and its local agencies. Toward this end, the local agencies worked together in varying ways. The agencies not only placed clients in their own respective localities, they worked together in placing clients in each other's localities. They trained employees together, and employees regularly transferred from one local agency to another. An agency in crisis often received help from another agency. AAA was, however, the central source of supervision and assistance for all the local agencies. As described in more detail in Part II B below, AAA developed and closely supervised a uniform plan of operation for all local agencies.

B. Common Supervision and Control

In determining whether there was common supervision and control over several business activities, a court must look beyond formalistic structure to the actual and pragmatic operation. *Dunlop v. Ashy*, 555 F.2d 1228, 1232 (5th Cir.1977). *See also Donovan v. Grim Hotel Co.*, 747 F.2d 966, 970 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985). Taking this approach, the court must conclude that the common supervision and control exercised over the local agencies by AAA and, in turn, by DeHaven was broad and substantial.

Although AAA and DeHaven claimed that their relationship with the local agencies was that of an equal partnership, with AAA or DeHaven as the investor partner and a local person as the working partner, the relationship was in fact more feudal. All local agencies were initially funded by AAA or DeHaven as investor partners. All significant decisions regarding the operation of the agencies were made by AAA and DeHaven, with the working partners and local management responsible for only the day-to-day operation of the agencies.

AAA developed a uniform plan covering every aspect of the operation of the local agencies, including employee hiring and training, bookkeeping, advertising, and placement of clients. In fact, the employees and management of AAA and the local agencies referred to AAA as the "home office." The local agencies were required to report to AAA at least twice a week on the success of their operations, and AAA conducted frequent audits of the local agencies to determine whether they were complying with the AAA program. The failure of a local agency's worker partner to comply with the AAA program would have resulted in AAA or DeHaven's certain termination of the agency, with all significant assets, including the tradename, good will, and business records, going to AAA or DeHaven.

Indeed, only AAA and DeHaven "could approve ... adherence to federal minimum wage and overtime requirements," *Grim Hotel Co.,* 747 F.2d at 970; such evidence "is a most significant control indicator in a wage and hours action." *Id.*

C. Common Business Purpose

The related activities, the centralization of control, and the interdependence present here are also all indicators of common business purpose. *Grim Hotel Co.,* 747 F.2d at 971. They reflect "[m]ore than a common goal to make a profit." *Brennan,* 482 F.2d at 1367. They reflect, as already noted, the common purpose of locating jobs for clients seeking employment in all areas served by AAA's network of local agencies.

III.

The Secretary seeks a remedial injunction requiring that AAA, DeHaven, and Hutto pay unpaid wages and overtime compensation, and he seeks a prospective injunction against future violations of the FLSA by AAA and DeHaven. He also seeks liquidated damages from AAA and DeHaven.

A.

The FSLA is binding only against an "employer," 29 U.S.C.A. §§ 206–07, which is defined under the Act as "any person acting directly or indirectly in the interests of an employer in relation to an employee," 29 U.S.C.A. § 203(d). The issue, therefore, for the court is whether AAA, DeHaven, and Hutto were employers. The evidence reflects that they were.

The definition of employer is "expansive," *Grim Hotel Co.,* 747 F.2d at 971, *quoting Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973); an employer is one who has " 'managerial responsibilities' and 'substantial control of the terms and conditions of the [employer's] work.' " *Id.* Furthermore, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Grim Hotel Co.,* 747 F.2d at 972, *quoting Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983).

The evidence here, as stated, is that AAA, DeHaven, and Hutto, separately and together had broad and substantial managerial control over the operation of the two Montgomery agencies. Hutto was responsible for the day-to-day operation of the two agencies, while AAA and DeHaven held the purse strings and were responsible for the over-all direction of the two agencies. Under these circumstances, AAA, DeHaven and Hutto were employers within the meaning of the FSLA, and were subject to the Act during the time period in question.

B.

The Secretary seeks a remedial injunction requiring that AAA and DeHaven pay unpaid minimum wages and overtime compensation for a period of three years and that Hutto pay such for a period of two years.[1] The court is of the opinion that such relief is appropriate here.

1. It appears from the Secretary's post-trial brief that he is seeking payment from Hutto for two years only.

The Portal-To-Portal Pay Act, 29 U.S.C.A. §§ 251–262, provides a two-year limitations period on recovery of unpaid minimum wages and overtime compensation under the FLSA, 29 U.S.C.A. § 255(a). However, where the violation of the act is "willful," a three-year limitations period is provided. *Id.* The Secretary contends that AAA and DeHaven willfully violated the act.

The test for willfulness is whether "the employer knew or suspected that his actions might violate the FLSA," *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972); the employer need only "know the FLSA was in the picture," *id.* As explained by the former Fifth Circuit,

> The entire legislative history of the 1966 amendments of the FLSA indicates a liberalizing intention on the part of Congress. Requiring employers to have more than awareness of the possible applicability of the FLSA would be inconsistent with that intent.

*Id. See also Castillo v. Givens,* 704 F.2d 181, 193 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983)

AAA and DeHaven were fully aware of the possible application of the Act to them. On numerous occasions before and during the period in question, FLSA officials visited AAA's central office and local agencies and informed the officers, managers and other personnel that their operations were covered by the FLSA. But more importantly, the evidence here reflects that AAA and DeHaven intentionally had time records falsified so as to prevent discovery of their violations of the FLSA. AAA and DeHaven required that the managers and other employees of the local agencies fraudulently indicate on time sheets submitted to AAA that they had worked 37½ to 40 hours a week even though they had worked substantially more hours. AAA and DeHaven also told FLSA officials that they were in compliance with the Act, irrespective of the Act's coverage, when AAA and DeHaven knew that they were not in compliance and never intended to be so.

AAA and DeHaven should therefore be liable for unpaid minimum wages and overtime compensation for a period of three years. The parties have stipulated that the liability for this period is $4,250.

Hutto may be held liable for a period of two years only. The parties have stipulated that the liability for this period is $1,400.

C.

■ The Secretary seeks a prospective injunction requiring that AAA and DeHaven comply in the future with the minimum wage, overtime compensation, and record keeping provisions of the FLSA.[2]

The evidence is clear that for the last ten years or more AAA and DeHaven carefully concocted and engaged in a scheme designed to impede the Secretary's enforcement of the Act. As already noted, they repeatedly assured the FLSA officials that, irrespective of the Act's applicability to them, they were in full compliance with the Act, when in fact they knew that they were not in compliance and had no intention of ever complying with the Act. And further, they intentionally falsified time records to prevent the Secretary from ever discovering their noncompliance.

With this evidence, this court would be remiss not to place AAA and DeHaven under a prospective injunction, the knowing violation of which will result in immediate and substantial punishment by this court.

D.

■ The Secretary's request for liquidated damages from AAA and DeHaven should also be granted.[3] The Portal-To-

2. The Secretary does not seek a prospective injunction against Hutto because she is no longer with the AAA operation.

3. It appears from the Secretary's post-trial brief that he is no longer seeking liquidated damages from Hutto.

Portal Pay Act provides that the court, in its discretion, may award liquidated damages under the FLSA, 29 U.S.C.A. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission ... was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]," 29 U.S.C.A. § 260. As with "willfulness," lack of good faith is demonstrated when an employer "knew or suspected that [its] actions might violate the [Act]," *Reeves v. International Telephone and Telegraph Corporation,* 616 F.2d 1342, 1353 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981), *quoting Coleman,* 458 F.2d at 1142. For the reasons already given in part III B of this memorandum opinion, the Secretary is entitled to liquidated damages in the amount of $4,250 against AAA and DeHaven. AAA and DeHaven have not acted in good faith, and they did not have reasonable grounds for believing that their conduct did not violate the FLSA. *See Reeves, supra.*

IV.

Finally, DeHaven contends that judgment may not be entered against him in his personal capacity because the court lacks personal jurisdiction over him.

Courts and scholars differ as to whether state or federal jurisdictional principles apply when, as in this case, a lawsuit arises under federal law but service of process is effected pursuant to a state long-arm statute. *E.g., Grim Hotel Co.,* 747 F.2d at 972 n. 9; *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264–69 (5th Cir.1983); 2 Moore's Federal Practice ¶ 4.25[7] at 4–291 (1985); 4 Wright & Miller, Federal Practice & Procedure § 1075 at 312–13 (1969). However, this court need not resolve this issue since Alabama's long-arm statute, Ala.R.Civ.P. 4.2(a)(2), authorizes the assertion of personal jurisdiction to the limits of federal law, that is, due process. *Alabama Power Company v. VSL Corp.,* 448 So.2d 327, 328 (Ala.1984).

In *Calder v. Jones,* 465 U.S. 783, ——, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984), the Supreme Court reaffirmed that "[t]he Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has 'certain minimum contacts ... such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)].' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)." In assessing whether this requirement has been met, the critical issue for the court is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

DeHaven asserts that because he is not a resident or citizen of Alabama and was not an investor partner in any of the local agencies located in Alabama, the due process requirement has not been met. However, DeHaven created AAA and has for most part directed its activities throughout the southeast. The evidence reflects that he has also personally visited and placed telephone calls to the two Montgomery agencies on may occasions. Furthermore, this court is firmly convinced that he specifically directed the falsification of time records in the two Montgomery agencies as well as in other local agencies. Under these circumstances, DeHaven has had sufficient minimum contact with Alabama to have reasonably anticipated being haled into court here.

Nor may DeHaven hide behind the assertion that he acted only as a corporate functionary of AAA. Most states recognize "the general rule ... that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting within their corporate authority." *Candy*

*H. v. Redemption Ranch, Inc.*, 563 F.Supp. 505, 513 (M.D.Ala.1983) (citations omitted). Here, DeHaven's wrongdoing was specifically aimed at harming and defrauding Alabama employees of AAA's local agencies and is closely akin to tortious conduct. Under these circumstances, DeHaven should be personally liable for his conduct. *See, e.g., Grim Hotel Co.*, 747 F.2d at 974. Recently, in *Calder v. Jones*, the Supreme Court upheld personal jurisdiction over a non-resident in a libel action, stating that

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.... In this case, petitioners are primary participants in alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.

465 U.S. at ——, 104 S.Ct. at 1487 (citation omitted).

Moreover, the FLSA is intended to hold "employers," as defined by the Act, personally liable for their wrongful conduct. DeHaven was aware of the Act's probable application to him and the two Montgomery agencies. It therefore follows that he should have reasonably anticipated being personally haled into court in this state for, as evidenced here, the wrongful conduct he personally and intentionally engaged in and caused in this state.

An appropriate judgment will be entered.