**KALMON SHOE MANUFACTURING COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17166.**

United States Court of Appeals Eighth Circuit.

Aug. 1, 1963.

Rehearing Denied Aug. 28, 1963.

Milton H. Tucker, of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for petitioner; Samuel H. Liberman, Abe J. Garland and Jerome M. Rubenstein, St. Louis, Mo., with him on the brief.

Harry Marselli, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent; Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson, Robert N. Anderson and Edward L. Rogers, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

Petitioner seeks review of the Tax Court's re-determination of a deficiency in its income tax for the taxable period February 1, 1955 to October 31, 1955, amounting to $33,612.22. The Commissioner of Internal Revenue first determined such deficiency tax to be $46,323.-00. The primary contention made by petitioner here is that there is no substantial evidence in the record to support the Tax Court's re-determination.

Taxpayer is a Missouri corporation, organized on January 25, 1955. It has its principal place of business in St. Louis. Paramount Shoe Manufacturing Company is likewise a Missouri corporation, organized on March 16, 1929. Its principal place of business is also St. Louis. Paramount was engaged in the manufacture of women's novelty dress shoes. Because of losses Paramount sustained since 1947, negotiations began between its officers and directors and one Morris Kalmon for the sale of Paramount's assets to Kalmon. These officers and directors of Paramount were also

its major stockholders. Kalmon was Vice-President and General Manager of Paramount, himself owning a small portion of its stock. Pursuant to a written agreement between the parties, the purpose of which was to permit Kalmon to purchase Paramount as a going concern, Paramount organized taxpayer as a Missouri corporation, with an authorized capital stock of 1,000 shares, no par value. On February 1, 1955, by the terms of the agreement, Paramount transferred, with certain exceptions, all of its assets to the taxpayer. As consideration, the taxpayer issued to Paramount its 1,000 shares of capital stock and, in addition, assumed all of Paramount's liabilities incurred prior to February 1, 1955, exclusive of its liabilities for federal and state income taxes for the period November 1, 1954 to February 1, 1955. The assumed liabilities amounted to $269,289.44. On February 15, 1955, still under the terms of the contract, Paramount transferred 600 shares of taxpayer's stock to Kalmon for $60,000.00, and 200 shares of such stock to each of his two associates in the venture, for $20,000.00 from each of them.

It appears from the evidence adduced before the Tax Court that Paramount's adjusted basis (and book basis) for the assets transferred to taxpayer pursuant to the above-mentioned agreement, totalled $576,103.66. Of this amount, $441,167.32 was allocated to inventory items; and the remainder, $134,936.34, represented agreed-to non-inventory assets. In its income tax return for the taxable period in question, the taxpayer first treated the transaction above described as a non-taxable reorganization and, in computing the cost of goods sold by it during the taxable period, used as its beginning inventory the sum of $441,167.32, or the same amount as Paramount's adjusted cost basis. However, in the Tax Court petitioner conceded that it was erroneous to treat the transaction as a non-taxable reorganization and that it was in fact a taxable one. Thereupon, taxpayer re-stated before the Tax Court

its cost basis for the inventory assets acquired as $441,167.32, the same as Paramount's adjusted cost basis. In so doing, it contended that Paramount's book value and cost basis for all assets acquired by it was $576,103.66, and that such was the fair market value of the property transferred to it by Paramount. Also, that such was the best evidence available to measure the taxpayer's cost of all assets received by it. Therefore, taxpayer concluded that the cost basis of the inventory here considered was $441,167.32, the same as Paramount's adjusted cost basis.

The Tax Court found that taxpayer's total cost for all the assets received in the transaction was $369,289.44. That amount was determined from evidence establishing that Paramount's liabilities assumed by petitioner were $269,289.44, plus the value of 1,000 shares of petitioner's stock which was issued to Paramount under the arrangement at a value of $100,000.00. It then considered that the parties having agreed that the non-inventory assets petitioner received amounted to $134,936.34, the Court determined that the inventory acquired by petitioner on February 1, 1955, had a fair market value of $234,353.10. The Court accordingly held that the latter amount was petitioner's cost of the inventory here considered for the purpose of computing its taxable income for the taxable period above mentioned.

Petitioner claims, however, that the evidence reveals that all the stockholders of Paramount were not willing sellers to the bargain in question, and that unusual circumstances which revealed Paramount's chance of incurring further operating losses if a quick sale was not effected, made it impossible for the stockholders to dispose of Paramount on a basis likely to procure the reasonable market value of the business. However, there was testimony before the Tax Court by Mr. Sam Wolff, President and Director of Paramount, a man engaged in the shoe manufacturing business for almost thirty-five years and obviously acquainted with and responsible for

Paramount's affairs, who participated in negotiations leading to the transaction here considered, that because of the broken specific character of the inventory assets here considered, the market therefor was much lower than their replacement cost—that is, what Paramount or any other buyer would have to pay generally to procure such items if indeed they wanted them. As a result, it was Mr. Wolff's opinion that Paramount would not have received more for the inventory or its entire business by attempting to sell it to other shoe companies, than it did by selling it along with the non-inventory assets to Kalmon for the sum bargained for, $369,289.44. This testimony, along with other facts in the record indicating that the parties negotiated at arm's-length with one another, setting a price reflecting the value or worth of the Paramount Company as a going concern, was sufficient evidence upon which the Tax Court could predicate the findings of fact it made; this notwithstanding testimony by the Purchasing Agent for petitioner, that when he made Paramount's inventory he valued it at $441,167.32, which was the lower of cost or market for replacement. From the testimony as given by that witness and other evidence adduced before the Tax Court, a reasonable inference could be made that the inventory in question was of odd lots, only good to Paramount's production and that replacement cost was not the market value thereof or the actual bargained-for price paid for the inventory by petitioner. The conflict in the evidence respecting that matter emphasizes that each side in the case at bar tried to negate the other party's testimony as to the value of the inventory for tax purposes. It appears from the record that the Tax Court took into consideration all the relevant factors presented by the evidence and treated the transaction in question as one between an informed, willing seller to an informed, willing buyer in reaching the agreement they did and the price actually paid by petitioner for the inventory in question. Cf. Arc Realty Company v. Commissioner, 295 F.2d 98 (8 Cir., 1961).

Manifestly, the issue tried and determined by the Tax Court in the case at bar was one of fact and not an issue of law. Even if we should disagree with the Tax Court's conclusion (which we do not), there could be no reversal here. The Tax Court was the trier of the facts.

"This Court, upon review, will not retry issues of fact or substitute its judgment for that of a trial court; and the power of a court or an administrative agency to decide doubtful questions of fact within the limits of its jurisdiction is not confined to deciding them correctly or in conformity with what might be the views of this Court." Coates v. Commissioner of Internal Revenue, 234 F.2d 459, l. c. 463 (8 Cir., 1956).

Petitioner's claim that even if the total cost of the assets, including inventory, acquired by it from Paramount was $369,289.44 (including $100,000.00 for the stock and $269,289.44 for Paramount's assumed liabilities), there is no basis in the record for concluding that petitioner's beginning inventory was $234,353.10, is without merit. Petitioner argues that no testimony was introduced on behalf of respondent which permitted the Court to reach the conclusion it did. None was needed. The realities of the transaction were sufficient. Schoenberg v. Commissioner, 302 F.2d 416 (8 Cir., 1962). The Tax Court, as the trier of fact, had the responsibility of allocating petitioner's total cost basis, $369,289.44, among the total assets it received according to their respective values. The Tax Court allocated this total cost basis first to the non-inventory assets according to their agreed-upon value, $134,936.34, and the balance, $234,353.10, to the inventory assets. Such procedure was entirely proper. Anderson v. Commissioner, 250 F.2d 242, 249 (5 Cir., 1957), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844 (1957).

The decision of the Tax Court is affirmed.