W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,

v.

PURE ICE COMPANY, Inc., Vance M. Thompson and Mrs. Wanda Lee, Appellees.

No. 17204.

United States Court of Appeals Eighth Circuit.

Sept. 4, 1963.

Ridge, Circuit Judge, dissented.

N. Thompson Powers, Deputy Sol., Dept. of Labor, Washington, D. C., Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Jacob I. Karro, Isabelle R. Cappello, Attorneys, Department of Labor, Washington, D. C., and Earl Street, Regional Attorney, Dept. of Labor, Dallas, Tex., on the brief, for appellant.

Wayne Boyce, Newport, Ark., Fred M. Pickens, Jr., Newport, Ark., and W. J. Dungan, Augusta, Ark., on the brief, for appellee Vance M. Thompson.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

The Secretary of Labor brought two actions against the defendants Pure Ice Company, Inc., Vance M. Thompson, B. C. Huddleston and Wanda Lee based on the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., the first seeking an injunction against further violations of the Act and the second to recover back wages due because of the alleged violations. The cases were consolidated for trial. In the first case the District Court granted the injunction as to Pure Ice Company, Inc., and Vance M. Thompson only, entering judgment of dismissal as to the other defendants. There has been no appeal from such disposition. In the second case the District Court ordered Pure Ice only to pay the wages due, dismissing as to the remaining defendants. From the judgment dismissing as to Thompson, the Secretary appeals.

The sole and only question involved is whether the court erred in failing to find Thompson to be an "employer" within the purview of the Fair Labor Standards Act so as to be held personally responsible for back wages owed to the employees of Pure Ice Company, Inc. 29 U.S.C.A. § 216(b).

Concededly, the Pure Ice Company, Inc., was engaged in the production of goods for interstate commerce so that its nonexempt employees were covered by the provisions of the Act. It is also undisputed that the wage and record-keeping provisions of the Act had been violated and that two employees of Pure Ice had been underpaid.

Pure Ice was organized as a corporation by the defendant Vance M. Thompson and one Franklin Lee in 1951 with Thompson owning 75% of the stock and Lee 25%. Prior thereto Lee had worked as an employee of Thompson's at McCrory and later at North Little Rock. Lee wanted to get into the ice business himself and accordingly he and Thompson formed the corporation which purchased two ice plants in the City of Batesville, Arkansas. Lee became manager and vice president of the corporation. Thompson became president. At the outset he advanced to the corporation some $40,000 which was used to purchase the corporation's ice plants. Subsequently, during the course of its business life, the corporation was loaned other money by Thompson or by companies in which he had an interest. In 1957 Franklin Lee died and his son, Edward Lee, assumed operation of the ice plants as general manager. The change was unfortunate for the corporation. What had been a profitable business venture under the management of Franklin Lee changed drastically after his son, Edward, took over. In October 1960 Edward Lee "left the country, leaving the plant in debt and no address where he was". His wife, the defendant Wanda Lee, then "stepped into his shoes". Mrs. Lee kept the books, fixed her own salary, hired and fired other employees, determined their salaries and their hours. She "did what a manager is supposed to do". For a period of six weeks or two months the defendant Thompson was unaware of the disappearance of Edward Lee and the taking over of the management of the corporation by Wanda Lee. When he did learn of it, he acquiesced in the arrangement, stating that he thought she could handle the

plant until it was sold. Mrs. Lee remained as manager during the period with which we are here concerned.

In addition to stock ownership in Pure Ice, Thompson held or had held an interest in several other enterprises, including other ice companies at Wynne and Searcy, Arkansas. Thompson's testimony was that he always left all the decisions, including those pertaining to wages and hours, to the managers of the companies, excepting that in Wanda Lee's case, after he learned of the disappearance of her husband and her having taken over as manager, he advised her about mechanical matters. Mrs. Lee's testimony corroborated that of Thompson to the effect that she was the manager of the plant and consulted him only with reference to mechanical problems of operation. Other employees of Pure Ice testified that they contacted Thompson concerning mechanical difficulties at the plant, although one of them did say that he had also consulted Thompson about the advisability of cutting down from three shifts to two. The employees agreed, however, that they never discussed their wages or hours with Thompson and that these matters were determined by Wanda Lee, who hired them.

In November 1960 Willard Krueger, an investigator for the Department of Labor, discovered that violations of the Fair Labor Standards Act were taking place. He at that time talked to both the manager, Wanda Lee, and the president of the corporation, Thompson, about the violations and the corrective measures that should be taken. Thompson's testimony was that that was the first occasion on which he had concerned himself with wage and hour practices at the Pure Ice plant. In June and July of 1961 Krueger returned and found that the situation had not been remedied.

In June 1961 foreclosure suits were commenced against Pure Ice, one by a bank in which Thompson had an interest and one by a family corporation, all of the stock of which was owned by Thompson's children or grandchildren, although he did occupy the office of vice president of the corporation. Although the assets of the Pure Ice Company, Inc., were lost through foreclosure, the corporation itself had not been actually dissolved at the time of trial.

Thompson testified that the liquidation of the corporation was precipitated by the precarious financial position in which the plant had found itself. At one point in his testimony, however, he made the following statement:

"Well, then Investigator Krueger moves in and makes it so complicated and the plant was operating at a loss and so there was nothing to do but to liquidate it."

In granting the injunction against Thompson in the first case but refusing to hold him personally liable for back wages in the second case, the District Court stated:

"However, it is one thing to say that an individual officer or stockholder may be subjected to an injunction; it is quite another thing to say that merely because an individual connected with a corporation may fall within the statutory definition of an 'employer' such individual becomes liable personally for wages due employees under the Act. And it should be emphasized in this connection that whereas the granting of an injunction in a case of this kind rests within the sound, albeit limited, discretion of the Court, liability for wages and for liquidated damages and attorneys' fees under section 216(b), if it exists at all, is not, in general, a matter of discretion."

After finding that "there is no evidence that the corporation was a sham or a dummy or that it was set up for the purpose of defrauding creditors, including unpaid employees", the court stated:

"The evidence does not indicate, and the Court certainly will not presume, that Mr. Thompson has willfully and deliberately caused any of his ice plants to be operated in violation of the law, or that he has know-

ingly and willfully aided and abetted his employees in violating it. Rather, *it appears to the Court that Mr. Thompson has simply kept himself in ignorance as to what has been going on at the plants in which he owns controlling interests and has seemed to feel that he has no personal responsibility either to keep his operations outside the scope of the Act or to bring about compliance with the Act where coverage exists.*

"A business man like Mr. Thompson is not privileged to set up a corporation to engage in activities which may bring its employees within the coverage of the Act and then completely ignore the questions of coveracy (sic) and compliance which arise in connection with the day to day operations of the business. Such a business man, in the Court's estimation, has an affirmative duty to know whether his operations are covered by the Act, and if they are, to take some affirmative steps to see to it that there is compliance with the Act's requirements. If there is a failure on the part of such an individual to perform those duties, then he should be enjoined along with his corporation, although, as has been said, it does not follow from the fact that he may be subject to injunction that he is also personally liable for wages.

"In view of the history of Mr. Thompson's ice plants at Batesville and at Wynne, the Court is of the opinion that absent personal injunction it is not improbable that Mr. Thompson's ice operations will again be involved in violations of the Act. Conversely, the Court is persuaded that if Thompson is enjoined individually, no further violations will occur with respect to ice plants which he controls. Hence, Mr. Thompson will be enjoined." (Emphasis supplied.)

It would appear clear that the trial court was of the opinion that Thompson's interest in various other ice enterprises in addition to his interest in Pure Ice and his having kept himself in ignorance of what was going on justified the granting of the injunction in the first case. Be that as it may, the determination in the first case that Thompson should be enjoined personally as well as the corporation is not before us, as there has been no appeal therein. Accordingly, any question as to the propriety of enjoining Thompson personally in the first case may be completely disregarded. The only question for determination here is whether or not there is substantial testimony in the record to support the District Court's conclusion that Thompson was not an employer so as to hold him personally for unpaid overtime compensation to the employees of the corporation. 29 U.S.C.A. § 216(b). For the purposes of the Act, an employer is defined as follows, 29 U.S.C.A. § 203 (d):

" 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee * * *."

Whether Thompson was an "employer" within the purview of the Act presented an issue of fact to be determined by the trial court based on the evidence in the case. It is the contention of the Secretary that, "Vance Thompson, as the corporate defendant's controlling stockholder and dominating figure, and as the successor to all its assets, should have been included in the judgment for back pay admittedly owed by the insolvent corporation". There is little question from the record but what Thompson as the majority stockholder and dominant personality in Pure Ice Company, Inc., could have taken over and supervised the relationship between the corporation and its employees had he decided to do so. A careful reading of the record, however, indicates that he did not do so. He lived at McCrory, Arkansas, not Batesville where the Pure Ice Company, Inc., was engaged in business. He had other business interests, including ownership through stock or partnership in a number of ice companies. He left the matter of

compliance with the Fair Labor Standards Act up to the various managers of the businesses in which he had an interest. He visited the Pure Ice plant two or three times a year but had nothing to do with the hiring of the employees or fixing their wages or hours. When Wanda Lee became manager—a fact of which Thompson was unaware for some time after it occurred—the only change in the situation was that he was consulted with reference to mechanical difficulties of plant operation. Thompson was an investor in this and other corporations and enterprises. There is no substantial evidence to support a finding that he was an "employer" within the meaning of the Act. That he might have taken over and acted " * * * in the interest of an employer [the corporation] in relation to an employee" is beside the point as long as he did not do so. If we had here a combination of stock ownership, management, direction and the right to hire and fire employees, then a contrary conclusion would be well supported. As it is, the issue being one of fact and the trial court having refused to hold Thompson as an employer, and its conclusion being supported by substantial evidence, this court may not set it aside. Kalmon Shoe Mfg. Co. v. Commissioner, 8 Cir., 1963, 321 F.2d 189; Fitts' Estate v. Commissioner, 8 Cir., 1956, 237 F.2d 729, 733; Coates v. Commissioner, 8 Cir., 1956, 234 F.2d 459, 463.

Affirmed.

RIDGE, Circuit Judge (dissenting).

Since it appears to me, from the memorandum opinion of District Judge Henley (unreported), that he did not enter judgment in favor of appellant, for and on behalf of the employees for whom this action was brought for unpaid "minimum wages" and "overtime compensation" due them under the Fair Labor Standards Act, 29 U.S.C.A. § 201, etc., because he considered common law tests of employment and the theory of individual immunity under the corporate entity doctrine to be applicable, and not because the evidence did not establish appellee Thompson to be an "employer" within the pur-

view of Section 203(d) of the Fair Labor Standards Act (29 U.S.C.A. § 203 (d)) I most respectfully dissent from the majority opinion. It was Judge Henley's conclusion that "(s)uch personal liability should be imposed only where in ordinary civil litigation the corporate entity would be ignored and personal liability for corporate debts imposed on the individual involved."

The District Court specifically found appellee Thompson to be President and principal stockholder of Pure Ice Company, who "kept himself in ignorance as to what (was) going on at the plant * * *" and that Thompson "has seemed to feel that he has no personal responsibility, either to keep his operations outside the scope of the (F. L. S. Act) or to bring about compliance with the Act where coverage exists." The Court found that Thompson "always left that up to the managers" of the several corporations of which he was the dominant officer and controlling stockholder, and "never bothered (himself) with such matter," without making any determination as to Thompson's duties as an officer to the corporate entity or his responsibility for corporate conduct of Pure Ice Company. All the record reveals is that appellee Wanda Lee, not a stockholder, officer or ever formally appointed manager of appellee Pure Ice Company, without authority of anyone, merely "stepped into (her) husband's shoes who had been appointed manager" of that Company, after he left for parts unknown, and appellee Vance M. Thompson, as President and principal stockholder thereof, acquiesced in her so doing. "Her managerial functions were rather limited * * *."

An "employer" as defined in Section 203(d) of the Act (29 U.S.C.A. § 203(d)) is specifically made "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages" (29 U.S.C.A. § 216(b)). The right of action thereby created has nothing to do with the doctrine of piercing the corporate

veil. The legislative purpose thereof was to create a civil remedy for violations of the F.L.S.A. and to make "employers" as defined in Section 203(d), supra, liable therefor. This, on the same theory that those who "willfully violate" the provisions of Section 206 or 207 of the Act (29 U.S.C.A. §§ 206, 207) are subject to criminal prosecution under § 216(a) (29 U.S.C.A. § 216(a)). Many officers of a corporation, considered to be "employers" within the ambit of § 203(d), supra, have been prosecuted criminally and convicted for violations of the Act. There is no reason for not holding them civilly liable under Section 216(b) thereof, supra, if they are found to be an "employer" within the purview of that statute. Cf. Mitchell v. Stewart Brothers Construction Company, 184 F.Supp. 886 (D.C. Neb.1960); and Goldberg v. Dix Box Company, et al. (D.C.S.D.Cal.1962), 45 L.C. 31.325. See also, Chambers Construction Company v. Mitchell, 233 F.2d 717 (8 Cir. 1956); Hertz Drivurself Stations, Inc., v. United States, 150 F.2d 923 (8 Cir. 1945); Mitchell v. L. W. Foster Sportswear Company, Inc., et al., 149 F.Supp. 380 (D.C.E.D.Penn.1957).

The provisions of Section 203(d) of the Act, read in the light of Sections 206 and 207 thereof, are to make "employers", i. e. "any person acting directly or indirectly in the interest of an employer in relation to an employee('s)" *wages* and *hours of work*, civilly liable in damages for violations of the Act. Such provisions must be construed in the context of the history of federal absorption of governmental authority to control "wages" and "hours of work" and the right to hire and fire is not within the ambit of those sections of the Fair Labor Standards Act, supra. Cf. Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); Walling v. Portland Terminal Company, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1946); United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945); Kirschbaum v. Walling etc., 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1941).

The District Court found:

"In November, 1960, an inspection of both plants (controlled by Thompson) was made by a representative of the Department of Labor who found violations of the overtime and record keeping provisions of the Act. Those violations were called to the attention of both Mrs. Wanda Lee and Vance M. Thompson and it was explained to them what was necessary to bring the company into compliance with the law. Nothing was done to remedy the situation, and when a second investigation (made on October 24, 1961) disclosed that the violations were continuing, these suits were filed." (Par. added.)

From the record and findings of fact as made in the case at bar, absent any showing or finding as to restricted powers of Thompson, as President of Pure Ice Company, Inc., the legal presumption should be that he was vested with power to control and compel that Company's compliance with the mandates of the Fair Labor Standards Act.

The conclusion of the District Court, that failure on the part of Thompson to perform duties imposed upon him by the Act made him subject to "be enjoined along with the corporation * * *" but that "it does not follow from the fact that he may be subject to injunction that he is also personally liable for wages," is a conclusion of law that I consider to be a misinterpretation of Section 203(d) of the Act that should be corrected by this Court. I would reverse and remand this case for further proceedings in accordance with the concepts hereinabove expressed.