**James FIELDS, Appellant,**

v.

**ADVANCED HEALTH CARE MANAGEMENT SERVICES, LLC, Respondent.**

No. SD 30756.

Missouri Court of Appeals, Southern District, Division Two.

April 27, 2011.

John P. Clubb, Cape Girardeau, MO, for Appellant.

Joy J. Ferguson, Piedmont, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

James Fields ("Appellant") seeks review of the trial court's judgment denying him overtime pay from Advanced Health Care Management Services, LLC ("Respondent"). We affirm the judgment of the trial court.

### Facts and Procedural History

In accordance with our standard of review, we review the evidence in the light most favorable to the judgment. *Gifford v. Geosling*, 951 S.W.2d 641, 643 (Mo.App. W.D.1997).

Appellant was a licensed emergency medical technician ("EMT") and paramedic. Respondent was a Missouri limited liability company and had its principal office in Poplar Bluff. Respondent owned and operated a hospital in Ellington, as well as multiple medical clinics in Poplar Bluff, Van Buren and Doniphan. Respondent also managed and staffed ambulance districts for Ellington and Centerville in Reynolds County, and for Van Buren in Carter County.

On September 12, 2005, Appellant began working for Respondent as an hourly-wage employee. Respondent maintained a personnel file for Appellant, which included Appellant's job application, background

check, drug screen, tax withholding forms, and emergency contact information.

From September 12, 2005 through May 1, 2006, Appellant worked solely for Respondent on a full-time basis at Respondent's hospital in Ellington, and at ambulance sheds in Reynolds County and Carter County. West Carter County Ambulance District ("District") was a political subdivision of Carter County.

On May 1, 2006, District assumed responsibility from Respondent for managing the Carter County ambulance operation. Pursuant to a written contract, District leased employees from Respondent to staff District. The leased employees at that time included Cindy Boyer ("Boyer"), who was responsible for the day-to-day operational decisions of District. The written contract terminated on October 19, 2006, by its terms, when District placed Boyer on leave, without pay, for cause. At least after October 19, 2006, District was solely responsible for hiring; setting work schedules and pay; and directing, supervising and terminating persons who worked for District. During this period—May 1, 2006 through October 19, 2006—Appellant continued to work exclusively for Respondent on a full-time basis at Respondent's hospital in Ellington only.

Following termination of Boyer's employment on October 19, 2006, Jim Ogden ("Ogden") became the manager at District. Ogden previously had worked for Respondent until May 2006 when Boyer hired him to work as a medic for District. Ogden was familiar with Appellant because he originally hired Appellant to work for Respondent in September 2005.

On October 23, 2006, Ogden hired Appellant to work shifts at District on a part-time, as-needed basis. At that time, Ogden was not an employee or representative of Respondent, but was only an employee of District. It is not unusual for an EMT/paramedic to have four or more different employers depending upon the terms of the EMT/paramedic's work arrangement. When Ogden hired Appellant to work shifts at District, Respondent had nothing to do with Appellant's terms of work, rate of pay, or place where Appellant worked when he was at District. That was completely within District's authority. Ogden created a personnel file for Appellant at District containing Appellant's personnel action forms, license, and credentials. Appellant was initially hired to work 12–hour shifts at $100 per shift. After working at District for some time, Appellant negotiated directly with District for a pay raise. On November 11, 2007, District's Board approved an increase in Appellant's shift pay to $125 per 12–hour shift.

Appellant continued to work full time for Respondent at Respondent's hospital in Ellington after he began working shifts for District. Respondent always paid Appellant an hourly wage for the work he performed directly for Respondent.

Appellant had separate conversations with Ogden; Don Ainley ("Ainley"), Appellant's supervisor at Respondent; and Steven Myers ("Myers"), Respondent's human relations director, concerning whether or not Appellant would receive overtime pay at District. All three individuals told Appellant that it was a "totally separate arrangement" as the work for Respondent was payment per hour, while the work for District was payment per shift. Ogden specifically told Appellant there was no overtime pay involved at District as District could not afford to pay overtime. After these conversations, Appellant knew he would not be receiving overtime pay, but continued to work for both Respondent and District.

Appellant specifically admitted his work at District was a second job. He also admitted Ainley was his supervisor at Respondent, and Ogden was his supervisor at District. As a part of that admission, Appellant agreed Respondent had complete control over his work while he was performing job duties for them, and District had complete control over his work while he was on shifts there. Appellant also acknowledged he wore a uniform identifying him with District when he was working shifts for District. Further, as acknowledged at oral argument, Appellant used District's physical facility, ambulances, and other equipment when he was working shifts for District.

At least by the time of Boyer's removal on October 19, 2006, Respondent began acting as a professional employment organization ("PEO") for District pursuant to an oral agreement with District.[1] A PEO operates as an external human resources and payroll department. The PEO assists small and medium-size companies with that infrastructure by securing workmen's compensation insurance; health insurance; payroll services; and human resources assistance including forms, handbooks, and other procedures that a larger company would have internally. The PEO fills the void for companies that either cannot afford to have their own human resources and payroll departments, or are new start-up operations. Respondent's payroll services as a PEO included payment of compensation; withholding from paid compensation and remission to taxing authorities of income and employment taxes; and preparation and mailing of tax-reporting documents like W-2 forms, for persons working for District.

In this capacity, Respondent—based on information provided by District as to shifts worked by Appellant and compensation due Appellant for those shifts—advanced on District's behalf, Appellant's compensation and paid Appellant with a check drawn on Respondent's account. Respondent issued Appellant a pay stub that itemized his compensation for his full-time hourly work for Respondent and for his part-time, flat-fee shift work for District. Respondent also provided Appellant a W-2 form for 2006 and 2007 that listed Respondent as Appellant's employer and included his compensation from both Respondent and District. District then reimbursed Respondent for the compensation Respondent advanced on District's behalf.

On February 7, 2008, Appellant was fired by Respondent for misconduct related to his employment with Respondent. When Ogden contacted Myers in order to determine whether or not Appellant could still work for District, Myers explained Appellant could no longer be under Respondent's umbrella for payroll and insurance purposes but if District wanted to set up its own arrangements for payroll and insurance, it would be District's decision for Appellant to continue working or not for District. District elected not to make those arrangements because of the cost and discontinued scheduling Appellant for shifts at District at that time.

Appellant then filed suit for unpaid overtime compensation for his shift work at District, pursuant to the "Fair Labor Standards Act [ ("FLSA") ] of 1938, 29 U.S.C. § 201, *et seq* and § 290.500, RSMo 2006

1. From the record, in October 2007, Respondent in turn began using Sommet Group, LLC as a PEO for Respondent's own business. Sommet issued Appellant's paychecks after Respondent retained Sommet to act as a PEO for Respondent. Sommet also provided Appellant with a W-2 form for 2008 that listed "The Personnel Department" as Appellant's employer.

[Missouri Minimum Wage Law]."[2] A one-day bench trial was conducted on May 14, 2010. Following trial, the trial court made findings of fact and conclusions of law, including the following:

[T]he Court finds that [Appellant] was dually and separately employed by District and [Respondent] during the period of time that [Appellant] is seeking overtime pay in his petition and that during this period of time it was the District who controlled and set [Appellant's] rate of pay, work schedule, and negotiated his pay with District on a PRN basis and that it was [Respondent] who controlled and set [Appellant's] rate of pay and work schedule under his employment with [Respondent] on an hourly basis and therefore [Appellant] is not entitled to receive any overtime compensation from [Respondent] other than what he has already been paid by [Respondent.]

. . . .

During the times [Appellant] is seeking overtime pay, [Appellant] had two separate jobs at two separate locations and two separate employers, to wit: [Respondent] and District, and therefore [Appellant] is not entitled to any additional overtime pay by adding together the number of hours worked for [Respondent] each week and the number of shift hours worked for District each week.

Appellant contends the trial court erred by finding Appellant was dually and separately employed by Respondent and District because this was against the weight of the evidence and a misapplication of the law in that Respondent was Appellant's sole employer for the reason it controlled the terms of Appellant's employment, including the hiring, payment of wages and benefits, and termination of employment. Appellant also contends the trial court erred in refusing to award Appellant overtime wages, liquidated damages, and attorney fees pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 216(b) and 215(a)(2) (2007), and section 290.527 because Respondent was Appellant's sole employer and failed to pay Appellant overtime for his shift work at District. Respondent contends the trial court's judgment was correct in that Appellant was dually and separately employed by Respondent and District, and Appellant was not entitled to any overtime compensation for his shift work at District.

The primary issues for determination are: (1) whether Appellant was dually and separately employed by Respondent with respect to his full-time hourly work for Respondent, and by District with respect to his part-time, as-needed shift work for District, or whether Respondent was Appellant's sole employer; and (2) if the employment compels payment of overtime pay.

## Standard of Review

In a court-tried case, the court will affirm the judgment of the trial court unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■■■ A judgment should be set aside as "against the weight of the evidence" only with caution and only when the reviewing court has a firm belief that the judgment is wrong. *Murphy*, 536 S.W.2d at 32; *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D.2010). Weight of the evidence refers to "weight" in probative value and not quantity or amount. Weight

**2.** All references to statutes are to RSMo Cum. Supp.2006, unless otherwise indicated.

of the evidence is determined by the evidence's effect in inducing belief in the proposition at issue when viewed in the context of all the evidence, and not by mathematics. *Id.*

Thus, an against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact. Although consideration of probative value necessarily involves some consideration of evidence contrary to the judgment, we nevertheless defer to the trial court as the finder of fact in our determination as to whether that judgment is against the weight of the evidence. Accordingly, where the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations in the same manner as in the resolution of a not-supported-by-substantial-evidence argument.

*Id.* (internal citations and quotations omitted).

█ Any error in applying the law is reviewed *de novo. East Hills Condominiums Ltd. Partnership v. Tri–Lakes Escrow, Inc.,* 280 S.W.3d 728, 733 (Mo.App. S.D.2009).

## Analysis

### *Dual or Sole Employment*

█ In Appellant's first point, he argues first that the trial court's finding of fact that Appellant was dually and separately employed by Respondent with respect to his hourly work, and by District with respect to his shift work, is against the weight of the evidence; and second, that the trial court's conclusion of law erroneously applies the law. Appellant does not advance any authority or argument that shows, or otherwise explains, how the trial court's conclusion of law is erroneous. Rather, Appellant's first point argues the facts found by the trial court do not support the trial court's conclusion of law. This argument is misguided.[3]

The FLSA expressly provides that an action for unpaid overtime compensation under the Act may be maintained in any federal or state court of competent jurisdiction. 29 U.S.C.A. § 216(b) (2007). In the circumstances of this case, 29 U.S.C.A. § 203 (2007) provides the following definitions under the FLSA:

(a) "Person" means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons.

. . . .

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer)

---

3. In his argument under his first point, Appellant asserts Respondent was Appellant's *sole* employer. Appellant never asserts: (1) Respondent's status as a separate employer of Appellant with respect to Appellant's full-time hourly work for Respondent, and (2) Respondent's role as a PEO for District with respect to Appellant's part-time, as-needed, shift work for District, cause Respondent to be a joint employer of Appellant under 29 U.S.C. § 203(d) (2007) and 29 C.F.R. § 791.2(b)(2) (2007). We decline to speculate as to the applicability of these provisions to Respondent in this case in the absence of an assertion, citation of authority, and argument by Appellant. *Boyd v. Boyd,* 134 S.W.3d 820 (Mo.App. W.D.2004); *Houston,* 317 S.W.3d at 189.

or anyone acting in the capacity of officer or agent of such labor organization.

(e)(1) Except as provided in paragraphs (2), (3), and (4), the term "employee" means any individual employed by an employer.

(2) In the case of an individual employed by a public agency, such term means—

. . . .

(C) any individual employed by a State, [or] political subdivision of a State. . . .

. . . .

(g) "Employ" includes to suffer or permit to work.

These terms are given similar definitions under the Missouri Minimum Wage Law with the exception of "employ," which is not defined. § 290.500(3)(4)(8). In addition, 8 C.S.R. 30–4.010(1) (2004) states that except as otherwise provided in Missouri law, the interpretation and enforcement of the Missouri Minimum Wage Law will follow the FLSA regulations as last amended on December 16, 2004.

■ Appellant cites us to no Missouri cases interpreting these statutes and we find none in our research of this issue. However, we find other courts have applied an "economic realities" test to determine whether an employment relationship exists under the FLSA. In applying this test, courts look to different factors with no one factor being dispositive and no single set of factors being exhaustive. In addition, the factors are not applied mechanically, but must be considered in the context of the "economic realities" and circumstances of the whole work relationship. *Baker v. Stone County, Missouri*, 41 F.Supp.2d 965, 979–81 (W.D.Mo.1999); *Barfield v. New York City Health and Hospitals Corporation*, 537 F.3d 132, 141–43 (2nd Cir.2008).

In *Baker*, the court utilized four factors to determine the "economic realities" of the work relationship. The four factors were: (1) who has the power to hire and fire the worker; (2) who supervises and controls the worker's work schedule and conditions of work; (3) who determines the rate and method of payment of the worker; and (4) who maintains work records. *Baker*, 41 F.Supp.2d at 981. In addition, in *Barfield*, the court identified another factor relevant to this inquiry as to whose premises and equipment were used to perform the work. *Barfield*, 537 F.3d at 143.

■ Decisions of these federal district and intermediate appellate courts are not binding on us, but do merit our respect. *Doe v. Roman Catholic Diocese of St. Louis*, 311 S.W.3d 818, 823 (Mo.App. E.D. 2010). We find *Baker* and *Barfield* to be persuasive, and borrow on the analysis of these decisions to aid our analysis here.

We conclude the four factors utilized in *Baker*, comprise the most appropriate framework for applying the "economic realities" test to Appellant's work relationship with Respondent and District.

The parties do not dispute Respondent was Appellant's employer with respect to Appellant's fulltime hourly work for Respondent at its hospital in Ellington. The only dispute is whether Respondent or District was Appellant's employer with respect to Appellant's part-time, flat-fee, as-needed shift work for District. Appellant argues that the trial court's ruling that District was Appellant's employer with respect to Appellant's shift work for District is against the weight of the evidence. Viewing all of the evidence presented to the trial court on this issue, and giving the trial court's credibility determinations due deference as we must, we are not firmly convinced that the judgment is wrong. *Houston*, 317 S.W.3d at 186. We first

refer to the four factors for the "economic realities" test described in *Baker*.

The first factor clearly weighs in favor of the conclusion that District was a separate employer. District alone: (1) hired Appellant on October 23, 2006, to perform shift work, and (2) chose to discontinue his shift work after Respondent terminated Appellant's employment with Respondent. District's reason for discontinuing Appellant's shift work was Appellant was no longer eligible for the services and benefits Respondent provided to District in Respondent's capacity as a PEO, and District declined to arrange those services and benefits for Appellant either on District's own, or from another PEO, because of the cost.

The second factor clearly suggests a conclusion in favor of separate employment with District. District alone supervised and controlled Appellant's work schedule and conditions of work with respect to his shift work for District. This fact was admitted by Appellant.

The third factor clearly falls in favor of separate employment. District alone determined Appellant's rate and method of payment for his shift work for District, including his initial flat fee of $100 per shift, and subsequent raise to $125 per shift, which Appellant negotiated directly with District.

The fourth factor is inconclusive, but leans in favor of Appellant. District did maintain limited work records relating to Appellant's shift work for District, including Appellant's personnel action forms, EMT/paramedic license and credentials, and records that showed Appellant's shift pay and shifts worked. Respondent maintained significant work records for Appellant both with respect to Appellant's fulltime hourly work for Respondent, and in its capacity as a PEO for District, with respect to Appellant's shift work for District. In fact, Respondent showed itself as Appellant's employer on Appellant's 2006 and 2007 W–2 forms. In comparison to Respondent's work records for Appellant, District's work records for Appellant were incomplete and, as Respondent's counsel acknowledged at oral argument, were poorly kept in an effort to "operate on the cheap."

Another factor we deem appropriate to this analysis is the use of premises and equipment in performing work. *See Barfield*, 537 F.3d at 143. Here, Appellant used District's physical facility, ambulances and other equipment, and wore a District uniform when performing shift work for District.

Individually, and in the aggregate, the premises and equipment factor from *Barfield* and the first three factors of the "economic realities" test in *Baker*, fully support the trial court's finding that Appellant was separately employed by District with respect to his shift work for District. This support is not overcome by the fact the fourth *Baker* factor leans in favor of Appellant. That one factor alone is not sufficient to control the determination of who Appellant's employer was with respect to his shift work for District, and does not make Respondent Appellant's employer with respect to his shift work.

Respondent's work records for Appellant and conduct in acting as a PEO for District, do not leave us with a firm belief that the trial court's judgment is wrong. Appellant's first point is denied. Appellant was dually and separately employed by Respondent with respect to his fulltime hourly work for Respondent and by District with respect to his part-time, as-needed shift work for District.[4]

---

4. Although Appellant was told by all his supervisors that his employment arrangement

In Appellant's second point, Appellant claims the trial court erred in refusing to award Appellant overtime wages, liquidated damages, and attorney fees because Respondent failed to pay Appellant overtime for his shift work at District.[5] That point is moot in view of our decision affirming the trial court's judgment of dual and separate employment. There is no claim that Respondent failed to pay overtime if District was Appellant's employer with respect to his part-time shift work for District, therefore, the second point is denied.

The judgment of the trial court is affirmed.

RAHMEYER, P.J., and BATES, J., Concur.

would not yield overtime pay, all parties agree an employee cannot voluntarily waive overtime pay and the potential acquiescence of Appellant, prior to his termination, does not form a basis for our decision.

5. On April 18, 2011, Appellant filed a motion for attorney fees and costs incurred in pursuing this appeal as a prevailing party. The motion is taken with the appeal and, in view of our affirmance of the trial court's judgment, is overruled.