

# In the
# Missouri Court of Appeals
## Western District

WILLIE VANCE,

              Appellant,

v.

DON JOHNSON,

              Respondent.

**WD82251**

**OPINION FILED:**

**DECEMBER 17, 2019**

**Appeal from the Circuit Court of Johnson County, Missouri
The Honorable R. Michael Wagner, Judge**

**Before Division Four: Karen King Mitchell, Chief Judge, Presiding, Anthony Rex Gabbert,
Judge, and W. Ann Hansbrough, Special Judge**

Appellant Willie Vance ("Vance") appeals the circuit court's entry of Final Judgment in favor of Respondent Don Johnson ("Johnson"). He asserts one point on appeal, claiming the circuit erred in dismissing Johnson as a party. We reverse and remand for further proceedings.

## Facts

Respondent Don Johnson started A-1 Cabling LLC in 2009. He was, and remains, the only member of the LLC. For his first few years in business, he worked alone without any employees. In 2013, Appellant Willie Vance began working with Johnson part-time before being hired full-time beginning in 2014. Around the same time, Johnson hired Hailey Woods to handle invoicing

and payroll tasks in the office. Woods worked for Johnson until December of 2014. In January of 2015, Johnson hired Marty Junkins who took over Woods' tasks and also began managing client relationships.

Woods and Junkins both had authority to make management decisions including financial decisions, and they also had check-writing authority. However, Johnson retained the power to make hiring and firing decisions, set work schedules, and otherwise veto any decisions made by Woods or Junkins to the extent he chose to do so. Employees reported their hours with timesheets. Johnson reviewed these timesheets himself most of the time.

Cable installers including Vance were initially trained by Johnson, though over time he sent employees to independent trainers, and he also trained supervisors who then trained those working under them. Johnson and A-1 Cabling provided employees with most of the equipment necessary for their work including a "fiber splicer" and "cable certifier" worth $10,000 and $25,000 respectively. Employees also used vehicles provided by Johnson or A-1. Johnson initially purchased vehicles under his own name and leased them to A-1 Cabling, but as the business grew it was eventually able to buy its own equipment as needed, though the original vehicles owned by Johnson individually continued to be used by the business throughout its operation. When employees traveled as part of their work, A-1 paid for hotels for workers or reimbursed them for hotel expenses they personally incurred. A-1 Cabling provided employees with T-shirts to wear as uniforms. At the end of the working day, employees would email Johnson the details of the work they completed including photographs.

At some point during A-1 Cabling's operation, A-1 Cabling and Johnson were investigated by the State of Missouri for failing to comply with applicable labor laws. Prior to the investigation, A-1 Cabling's employees were treated as independent contractors, but the State determined – and

Johnson later testified that he agreed with this determination – that A-1 Cabling's workers were, in fact, employees. As a result of the investigation, A-1 Cabling paid fines to the State of Missouri, the Attorney General, and the IRS.

After litigation commenced, Johnson started a second company called Johnson Technologies. Johnson owns 49% of Johnson Technologies, and his wife holds the remaining 51%. Johnson Technologies was engaged in similar work to that undertaken by A-1 Cabling, LLC, and many of A-1 Cabling's customers began doing business with Johnson Technologies. At the time of the evidentiary hearing discussed below, Johnson testified that A-1 Cabling had a few hundred dollars in the bank, but otherwise held no assets. Vance argued that this was an attempt to shield assets from the pending litigation, but Johnson claimed that he had been considering the shift for some time because he did not like the name "A-1 Cabling," and by having his wife as part-owner of Johnson Technologies he could qualify for government contracts as a minority-owned business.

In June of 2015, Vance filed suit for unpaid wages. On July 1, 2017, with leave of the circuit court, Vance filed his Second Amended Petition "on behalf of himself and all [other] similarly situated" employees for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), Missouri's minimum wage laws, Section 290.500 *et seq.*, RSMo 2016 ("MMWL"), and for Wage-related Class Claims under Mo. Sup. Ct. R. 52.08.[1] His Second

---

[1] There was, it seems, some disagreement between the parties regarding the propriety of Vance's First Amended Petition as A-1 Cabling had filed a Motion to Dismiss prior to the First Amended Petition's filing such that leave of the court was required for Vance to amend his pleadings. The court never ruled on the motion to dismiss or subsequent motions entered by the parties, but according to the July 1, 2017 Order granting Vance leave to file his Second Amended Petition, the parties stipulated that a number of outstanding motions, including motions to dismiss, would be withdrawn.

Amended Petition named Don Johnson as a defendant alongside A-1 Cabling, who had been a party to the suit from the initial petition.

Johnson filed a Motion to Strike Don Johnson from the petition pursuant to Rule 55.27(e). The motion – which was a brief, two pages including the certificate of service – claimed that Vance had added a third party defendant "without leave, reason, or proof that [Johnson was] an indispensable party." Johnson also stated that Vance's actions were related to A-1 Cabling as a business entity, and that Johnson, who owned and managed A-1 Cabling, was shielded from liability.

In response, Vance argued that Johnson was permissively joined as an individual liable under the relevant statutes through Rule 52.05(a), and that he was not joined as a third-party defendant under Rules 52.11 or 52.04(a) as Johnson implied. He also suggested that the court should view the motion to strike as a motion for judgment on the pleadings pursuant to Rule 55.27(b) because Johnson was arguing that he was shielded from liability by A-1 Cabling's status as an LLC, and he was distinctly not arguing that the Second Amended Petition was "redundant, immaterial, impertinent, or scandalous" as required for a motion to strike under Rule 55.27(e). Finally, he presented arguments as to why Johnson was individually liable under the statutes, and he included excerpts from Johnson's deposition. Because, he argued, both he and Johnson incorporated evidence outside of the pleadings in their motions and suggestions, the court should view Johnson's motion to strike as one for summary judgment.

A hearing was held in October of 2017 where Johnson testified about his ownership and operation of the business, and counsel for the parties argued their positions. The court subsequently granted Johnson's motion to strike in a docket entry, stating: "On Respondent's Motion to Strike: Court, after hearing evidence, and oral argument, and taking the credibility of

4

the witness into consideration, grants Respondent's Motion to Strike." The court otherwise made no findings of fact or conclusions of law.

Some months later, Vance moved the court to vacate its earlier order granting Johnson's motion or, in the alternative, to declare the order final for purposes of appeal under Rule 74.01. A hearing was held on this motion. In support of his argument that there was no just reason for delaying an appeal, Vance argued that because A-1 Cabling was effectively defunct, pursuing litigation through to completion against A-1 Cabling to only then appeal Johnson's dismissal as a party would waste the time and resources of both the court and the parties. Also, he again raised his arguments as to why Johnson was a proper party under the statutes. This motion was denied through another short docket entry without any substantive findings.

Vance next moved the court to dismiss A-1 Cabling without prejudice and denominate its judgment as to Johnson a final judgment in Johnson's favor. At a brief hearing on October 1, 2018, the court agreed. A docket entry dated October 1, 2018 indicated a court-tried civil case, and final judgment in favor of Johnson was entered on October 4, 2018. Vance then timely commenced this appeal.

**Analysis**

For his sole point on appeal, Vance argues the circuit court erred in granting Respondent's Motion to Strike Don Johnson as a party. He argues that the FLSA and the MMWL allow individuals to be deemed statutory employers. He argues that an individual can be a statutory employer alongside a legal entity, and that in determining if an individual is a statutory employer, courts should employ the "economic realities" test rather than engage in state law tests for piercing the corporate veil. He argues that in this case he pleaded facts sufficient to satisfy the economic realities test for Don Johnson to remain as a defendant in the action.

5

Before we address the merits of Vance's argument, we must determine our standard of review. This requires us to clarify the procedural ambiguities in the record below, a topic on which the parties strenuously disagree. Vance argues that the motion to strike was more properly thought of as a motion to dismiss, but, because the parties included matters outside of the pleadings, that it should be viewed as a motion for summary judgment. Johnson argues that because an evidentiary hearing was held, and because Vance moved for and accepted a "final judgment" from the court, the matter should be viewed as having been tried on the merits by the court. Thus, he argues, the matter should be reviewed as a court-tried case under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

We agree with Vance that the motion to strike was more properly considered a motion to dismiss. "[T]he title of a motion is not dispositive; rather, the contents of the motion must be considered." *Murray v. Murray*, 326 S.W.3d 543, 546 (Mo. App. 2010) (citation omitted). Rule 55.27(e) states that a party may move to strike from any pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and yet Johnson's motion made no such allegations. Rather, Johnson argued that he was improperly joined and that A-1 Cabling's corporate form shielded him from liability. At the hearing on the motion, he abandoned any further mention regarding whether or not he was properly joined and argued solely that the evidence was insufficient to pierce the corporate veil. Given that Johnson's arguments, both on paper and orally, were primarily centered on his liability as an individual, we agree that the motion to strike operated as a motion to dismiss.

"If the court considers matters outside the pleadings, Rule 55.27(a) allows a motion to dismiss to be converted into a motion for summary judgment if certain procedures are followed." *State ex rel. Cmty. Treatment, Inc. v. Mo. Comm'n on Human Rights*, 561 S.W.3d 107, 112 (Mo.

6

App. 2018) (citation omitted). "Where there is no evidence that the court notified the parties that it intended to treat the motion as a request for summary judgment or considered matters outside the pleadings it will be treated as a motion to dismiss." *Id.* "When, however, 'both parties introduce evidence beyond the scope of the pleadings, the motion to dismiss is converted to a motion for summary judgment and the parties are charged with knowledge that the motion was so converted.'" *Id.* (quoting *City of N. Kan. City v. K.C. Beaton Holding Co.*, 417 S.W.3d 825, 830 n. 6 (Mo. App. 2014).

In the present case, after suggesting that the court consider the motion as one for summary judgment, Vance included deposition excerpts in his suggestions in opposition provided to the court. Thereafter, Johnson testified at the motion hearing, and his counsel relied on said testimony in arguing that Johnson should be dismissed as a party. The trial court then entered an interlocutory order "striking" Johnson as a party, and in that order made an express credibility finding with respect to Johnson's testimony at the motion hearing. The trial court's consideration of credibility in connection with its order is inherently inconsistent with viewing the court's action as the grant of summary judgment in favor of Johnson. "It is well-established that the court is not allowed to make credibility determinations when considering summary-judgment motions." *Loth v. Union Pacific Railroad Co.*, 354 S.W.3d 635, 642 (Mo. App. 2013). "Rather, such matters are for the trier of fact." *Id*. In light of their conduct, the parties not only knew the court might incorporate matters outside the pleadings in rendering its judgment on the motion, they expressly intended the same. And, in order to expedite appellate review of the trial court's order, Vance facilitated the entry of a final judgment that characterized the trial court's action as the entry of judgment following a trial to the court. That characterization is appropriate, given the migration of the trial court's method of resolving the "motion to strike" and the parties' acquiescence of the same.

7

Accordingly, we view the court's action in this case as the grant of final judgment in favor of Johnson on the merits.

We therefore review the trial court's judgment pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 36 (Mo. banc 1976), and will sustain the judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." In applying this standard of review, we defer to the trial court's credibility determinations. *Bowers v. Bowers*, 543 S.W.3d 608, 613 (Mo. banc. 2018). Because the trial court expressly found Johnson's testimony to be credible, we must determine whether it was error, based on that testimony, to conclude that Johnson was not individually liable under the statute relined on by Vance in his amended petition.

Both the FLSA and MMWL use identical language to define an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); § 290.500 RSMo 2016. Both statutes are remedial in nature, and we therefore construe them liberally to "protect the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754, 761 (Mo. banc 2014) (quoting *Specht v. City of Sioux Falls,* 639 F.3d 814, 819 (8th Cir. 2011)). "Doubts about the applicability of a remedial statute are resolved in favor of applying the statute." *Id*.

The "test of employment under the FLSA is one of 'economic reality.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015) (citation omitted). "To determine the economic reality of the relationship between an employee and a purported employer, courts consider whether the purported employer (1) had the power to hire and fire employees; (2) supervised and controlled employee's work schedules or conditions of employment; (3)

8

determined the rate and method of payment; and (4) maintained employment records." *Larson v. Isle of Capri Casinos, Inc.*, No. 16-00902-CV-W-ODS; 2018 WL 6495074 at *9 (W.D. Mo. 2018) (citing *Ash*, 799 F.3d at 961). "[N]o one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity." *Baker v. Stone County*, 41 F. Supp. 2d 965, 980 (W.D. Mo. 1999) (citation omitted). As to the MMWL, Missouri courts apply the *Fields* test, which includes the four factors set forth above along with a fifth factor: "whether the alleged employer['s] premises and equipment were used for the plaintiff's work." *Tolentino*, 437 S.W.3d at 758 (citing *Fields v. Advanced Health Care Mgmt. Servs.,* 340 S.W.3d 648, 654 (Mo. App. 2011).

Nothing in the MMWL "precludes liability for an employer based on common law agency or strict liability principles." *Id.* at 762. Similarly, "[t]he right of action" under the FLSA "has nothing to do with the doctrine of piercing the corporate veil." *Wirtz v. Pure Ice Co.*, 322 F.2d. 259, 263-64 (8th Cir. 1963).

We now consider these factors, in the context of Johnson's testimony, deemed credible by the trial court. When we consider the first factor, Johnson testified that he had the power to hire and fire employees as he personally hired the plaintiff, and stated the he could fire technicians if needed. Regarding the second factor, Johnson testified that initially, he personally trained and supervised technicians before utilizing independent trainers and hiring supervisors. As the company grew, and he was not always present with crews working in the field, they would email him daily reports of their work complete with pictures. He also testified that he set work schedules, and although he later delegated scheduling to office staff, he retained veto power over anything his office staff did.

As to the third factor, Johnson testified that office staff were in charge of payroll, though Johnson periodically checked their work, and he also personally reviewed timesheets much of the time. For the fourth factor, the record is not clear as to how employment records were kept, but we do know that Johnson personally handled the investigation with the State of Missouri regarding his employment practices, which presumably involved maintaining and accessing records for state investigators. As for the fifth factor specific to the MMWL, Johnson testified that the equipment utilized by employees included vehicles personally owned by Johnson in addition to the equipment and vehicles owned or leased by A-1 Cabling.

We also note that it is uncontested that Johnson was the sole owner of A-1 Cabling, and as such, and consistent with his testimony, he had absolute authority and responsibility regarding virtually all aspects of the business's operation. When we consider this alongside the factors analyzed above, it is plainly against the weight of the evidence and/or an erroneous application of the law to facts deemed credible by the trial court to conclude that Johnson was not Vance's statutory employer. Courts have so found a statutory employment relationship on facts far more attenuated than the facts in this case established by Johnson's testimony. *See Tolentino*, 437 S.W.3d 754 (reversing a grant of summary judgment where the factors indicated that Starwood Hotels could be considered a joint employer liable for unpaid wages when the workers were employed by a temporary staffing agency, and the agency illegally withheld wages).

Rule 84.14 states that we may "reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give." We reverse the trial court's entry of judgment in favor of Johnson, and grant judgment in favor of Vance finding that Johnson is a statutory employer under the FLSA and MMWL. We remand to the trial court for further proceedings to determine damages.

10

Point I is granted.

## Conclusion

In light of the foregoing, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

_____
Anthony Rex Gabbert, Judge

All concur.